UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JASON DAY | : |
| | : PRISONER CASE NO. |
| v. | : 3:04CV1246 (JCH) |
| | : |
| THERESA C. LANTZ, ET AL. | : NOVEMBER 29, 2007 |

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Jason Day, currently incarcerated at Cheshire Correctional Institution in Cheshire, Connecticut, filed this civil rights action pro se and in forma pauperis pursuant to 28 U.S.C. § 1915 against defendants Theresa Lantz, Fred Levesque, Remi Acosta, J. Dillon, J. Sadecki, Bruce Johnson, Captain Saundry, Correctional Officer Rooter, Kevin Stelmack, Pat Wollenhaupt, John M. Alves, Counselor Andrea, Larry Myers,[1] Karl Lewis, Brian Faneuff,[2] Sharon Brown, Brian Murphy, Thomas Colts, Officer Cavallaro, Jane Starkowski, Ellen Downing and James J. Ruane. On December 22, 2004, the court dismissed all claims in the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(I) and (ii), except the claim that defendants Wollenhaupt, Myers and Faneuff prevented Day from showering from April 2000 to January 2002. Defendants Wollenhaupt, Myers and Faneuff, as well as Day, have moved for summary judgment. For the reasons that follow, the defendants' motion is granted, and the plaintiff's motion is denied.

I. **Standard of Review**

In a motion for summary judgment, the burden is on the moving party to

---

1. Myers is incorrectly spelled Meyers in the caption of the complaint.

2. Faneuff is incorrectly spelled Faneuff in the caption of the complaint.

establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir.2000). The moving party may satisfy this burden "by showing–that is pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).

A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any, show that there is no genuine issue as to any material fact.'" Miner v. City of Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993) (quoting Fed. R. Civ. P. 56(c)). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson, 477 U.S. at 248). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, "the non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (quotations and citations omitted). Thus, "'[t]he

mere of existence of a scintilla of evidence in support of the [plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiffs].'" Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004) (quoting Anderson, 477 U.S. at 252).

The court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). If, "'as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (quoting Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996)).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

When cross-motions for summary judgment are presented to the court, summary judgment should not be granted unless one of the moving parties is entitled to judgment

as a matter of law upon genuinely undisputed facts. Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317,1320 (2d Cir. 1975).

## II.     Facts[3]

On February 23, 2000, Department of Correction officials transferred Day from Cheshire Correctional Institution ("Cheshire") to Northern Correctional Institution ("Northern"). Day remained at Northern until January 23, 2002, when he was transferred back to Cheshire. During the time period from February 2000 through January 2002, Larry Myers was the Warden at Northern, Patricia Wollenhaupt was a Correctional Hospital Nursing Supervisor at Northern, and Brian Faneuff was a Captain at Northern. Wollenhaupt's duties included overseeing medical staff, scheduling staff shifts and medical record reviews, evaluating staff performance, addressing and resolving problems between custodial and medical staff and providing health care to inmates. Wollenhaupt was also the Grievance Coordinator for medical grievances filed by inmates at Northern.

Day is a diagnosed diabetic who is also obese and suffers from gout and dry skin on his lower extremities. After Day's transfer to Northern on February 23, 2000, Dr. Morgan Vigneron examined Day on March 16, 2000, and noted that his heart exhibited a regular sinus rhythm, his lungs were clear, and there were scars on his ankles where skin ulcers had healed. Dr. Vigneron prescribed a medicated soap to be used on the

---

3. The facts are taken from defendants' Local Rule 56(a)1 Statement [Dkt. No. 79-3] and the Exhibits attached to defendants' Memorandum in Support of Cross Motion for Summary Judgment [Dkt. No. 79-1], the plaintiff's Local Rule 56(a)2 Statement [Dkt. No. 83], plaintiff's Declarations and Affidavits and the exhibits attached the affidavits [Dkt. Nos. 84-88], and the exhibits filed in support of plaintiff's Motion for Summary Judgment [Dkt. No. 77].

scars on Day's ankles.   In June 2000, medical personnel renewed the prescription for medicated soap for Day's dry skin.

On July 17, 2000, Day sent an Inmate Request Form to Warden Myers claiming that he was unable to use the showers in his housing unit because the steam generated by the hot water interfered with his breathing due to a respiratory condition. He asserted that he had not taken a shower since April 1, 2000, but had been washing up in his cell.  He proposed that correctional officials either: (1) lower the water temperature in the shower in his housing unit or, (2) permit him to shower in the medical unit or (3) disconnect the timer regulating water flow to the sink in his cell to make it easier to wash himself in his cell.   On July 20, 2000, Warden Myers informed Day that the medical department had indicated that he did not have a respiratory condition that would require the accommodations requested by him.  On July 24, 2000, Day filled out a health grievance seeking the same showering/washing accommodations for his alleged breathing problems.  On July 31, 2000, Grievance Coordinator Wollenhaupt denied the grievance requesting special shower privileges as inappropriate based on a physician's thorough review of Day's medical records.  There is a notation in Day's medical records by Dr. Morgan Vigneron on July 31, 2000, indicating that he had reviewed the medical records in response to Day's grievance and did not think there was any reason to permit Day to shower in the medical unit.  Day did not appeal the denial of the grievance.   Day submitted no further inmate requests or grievances regarding special shower privileges prior to his transfer to Cheshire in January 2002.

The activity logs for Day's housing unit during the time in question reveal that from the latter half of April 2000 through 2001, Day refused to take a shower on the

5

days he was scheduled to do so.   During that time, Day was washing himself using water from the sink in his cell.

## III. Discussion

Day asserts that he is entitled to summary judgment because there are no genuine issues of material fact in dispute and that he is entitled to judgment as a matter of law.   The moving defendants raise two grounds in support of their motion for summary judgment.   They argue that Day fails to state a claim under the Eighth Amendment for deliberate indifference to his hygiene and medical needs and that they are entitled to qualified immunity.

### A. Plaintiff's Motion for Summary Judgment [Dkt. No. 71]

Day's Motion consists of a section entitled "Statement of Facts," a section entitled "Contention of No Genuine Material Facts Remaining" and attached exhibits. Day has not filed a memorandum in support of his motion.   Rule 7(a) of the Local Civil Rules requires that a written memorandum of law should accompany "[a]ny motion involving disputed issues of law."   Because Day has failed to file a memorandum of law in support of his motion, the motion is denied.  See  D. Conn. L. Civ. R.  7(a).  ("Failure to submit a memorandum may be deemed sufficient cause to deny the motion.")   The court will consider the statements of fact and evidence submitted in support of those facts in opposition to defendants' motion for summary judgment.

### B. Defendants' Motion for Summary Judgment [Dkt. No. 79]

The only claim before the court is Day's allegation that Myers, Wollenhaupt and Faneuff prevented him from showering during the period from April 2000 through

6

January 2002. Day asserted that he suffered from a respiratory condition during this time period and could not use the showers in his housing unit because the doors on the shower stalls did not permit the steam generated by the hot water to ventilate quickly. Thus, he sought permission to use the showers in the medical unit. Myers, Wollenhaupt and Faneuff refused his request. Day alleges that he developed scars and ulcers on his right leg due to the fact that he did not shower during that time period. The defendants argue that they did not create the condition of confinement which allegedly caused the skin conditions affecting Day's leg and were not deliberately indifferent to a serious risk of harm to his health or safety.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Rhodes v. Chapman, 452 U.S. 337, 352 (1981). The inquiry is whether a defendant acted with "'deliberate indifference' to a substantial risk of serious harm" to a plaintiff's health and safety. Farmer v. Brennan, 511 U.S. 825, 828 (1994). In order to prove that a prison condition amounted to cruel and unusual punishment, a plaintiff must satisfy both an objective and a subjective standard. See Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002). To satisfy the objective test, a plaintiff must show that the conditions of his confinement pose an unreasonable risk of serious damage to health, or that they resulted in serious deprivations of his or her basic human needs, such as food, clothing, shelter, medical care, and reasonable personal safety. Id. The subjective element requires the inmate to show that correctional officials were aware of and disregarded a substantial risk to his or her health or safety. Id. at 185-86 (citation omitted). To do so,

the inmate must demonstrate that correctional officials were not only "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," but also that they "dr[e]w the inference." Id. at 186 (quoting Farmer, 511 U.S. at 837).

Day contends that in April 2000, he suffered from a respiratory condition that made it difficult for him to breath in the enclosed shower stalls in his housing unit due to the steam created by the running hot water. In support of this claim, Day submitted medical records from January 29, 1992, revealing his complaints of breathing difficulties due to hot temperatures in his cell at Somers Correctional Institution. The entries in the medical records indicate that medical personnel placed Day on oxygen for a short time until his respiration rate returned to normal, and that he was admitted to the hospital for observation. The following day, the doctor noted that Day exhibited no labored breathing and was in no apparent distress. There was no diagnosis of a respiratory condition. In February 1992, the physician noted a small amount of nasal congestion and clear breath sounds.

Day also submitted medical records from a correctional institution in Walpole, Massachusetts dated in March 1994, documenting a test performed by physicians at a Massachusetts hospital to determine why the plaintiff was having difficulty swallowing. The test revealed that Day exhibited abnormal swallowing and recommended a follow-up examination for further evaluation. The test also showed evidence of duodenitis, an inflammation of the wall of the first part of the small intestine. It is not clear from the available records as to whether Day underwent any follow-up evaluations in Massachusetts.

8

Day was transferred back to Connecticut on August 30, 1994. Day has submitted no evidence of any complaints of breathing or swallowing difficulties or any other respiratory problems after 1994. In July 2000, Dr. Vigneron reviewed Day's medical records and found no evidence to support Day's claim of a respiratory problem or need to use the shower in the medical unit at that time. In 2007, Dr. Edward Blanchette reviewed Day's medical records going back as far as March 1994, in connection with another lawsuit filed by Day, and averred that there were no diagnoses, test results, or other medical evidence to suggest that the plaintiff could not take hot, steamy showers. See Defs.' Reply Mem., Blanchette Aff. ¶¶ 5, 6, 18. Thus, in July 2000, when Day sent requests and filed a grievance seeking to use the shower in the medical unit, there was no evidence that Day suffered from a respiratory problem. Day has submitted no evidence to suggest that, after July 2000, he made any other requests to Myers, Wollenhaupt, or Faneuff regarding his alleged respiratory condition, or any other medical condition, and his need to use the shower in the medical unit.

Day's medical records from April 2001 reflect that a nurse practitioner observed very dry, scaley, peeling skin below the Day's knees and old healing abrasions to his ankles and noted that Day complained of a hole in his sinuses and stated that he was not showering because he felt like he would suffocate. The nurse practitioner prescribed a therapeutic lotion and medicated soap for Day's dry skin condition and indicated that she would discuss Day's case with Dr. Pillai and would check his old sinus x-rays or have Day undergo new x-rays. A note from the nurse practitioner, dated May 3, 2001, indicated that the sinus x-rays showed no abnormalities. See Defs.'s Mem. Support Summ. J., Ex. F at 87. Dr. Pillai examined Day on April 23, 2001,

and advised Day to continue to use the lotion and medicated soap for his dry skin condition. He did not diagnose Day as suffering from a respiratory condition or any other condition that would have precluded Day from taking a hot shower. See id. at 372.

Day has failed to submit evidence to show that he did not have access to the showers in his housing unit during the time period from April 2000 to January 2002, or that any medical condition precluded his use of those showers during that time period. Furthermore, Day has presented no evidence to support his allegations that his lack of showering during that time period caused him to suffer ulcers or scars to his legs. Although there is a reference in Day's medical records in March 2000 to scars on his ankles, this entry precedes the time period that Day claims he did not shower, and there are no other entries indicating these scars were untreated or became worse. Day's medical records reflect no evidence of ulcers developing during the time period from April 2000 to January 2002. Furthermore, Day concedes that he was washing himself using water in his cell during this time period and that Faneuff facilitated this process by ensuring that the water-flow timer in each cell Day was housed in at Northern was turned off. See Dkt. No. 87, Day Aff. ¶ 5. Thus, Day has not met his burden of demonstrating that the alleged prison conditions in his housing unit resulted in deprivations of his health or personal safety and has failed to satisfy the objective element of an Eighth Amendment claim.

The court concludes that Day fails to meet his burden of presenting evidence demonstrating a genuine issue of material fact as to the objective component of his Eighth Amendment conditions of confinement claim. Accordingly, the defendants'

and advised Day to continue to use the lotion and medicated soap for his dry skin condition. He did not diagnose Day as suffering from a respiratory condition or any other condition that would have precluded Day from taking a hot shower. See id. at 372.

Day has failed to submit evidence to show that he did not have access to the showers in his housing unit during the time period from April 2000 to January 2002, or that any medical condition precluded his use of those showers during that time period. Furthermore, Day has presented no evidence to support his allegations that his lack of showering during that time period caused him to suffer ulcers or scars to his legs. Although there is a reference in Day's medical records in March 2000 to scars on his ankles, this entry precedes the time period that Day claims he did not shower, and there are no other entries indicating these scars were untreated or became worse. Day's medical records reflect no evidence of ulcers developing during the time period from April 2000 to January 2002. Furthermore, Day concedes that he was washing himself using water in his cell during this time period and that Faneuff facilitated this process by ensuring that the water-flow timer in each cell Day was housed in at Northern was turned off. See Dkt. No. 87, Day Aff. ¶ 5. Thus, Day has not met his burden of demonstrating that the alleged prison conditions in his housing unit resulted in deprivations of his health or personal safety and has failed to satisfy the objective element of an Eighth Amendment claim.

The court concludes that Day fails to meet his burden of presenting evidence demonstrating a genuine issue of material fact as to the objective component of his Eighth Amendment conditions of confinement claim. Accordingly, the defendants'

motion for summary judgment is granted.

## IV.     Conclusion

Day's Motion for Summary Judgment [**Dkt. No. 71**] is **DENIED** and the defendants' Motion for Summary Judgment [**Dkt. No. 79**] is **GRANTED**. The Clerk is directed to enter judgment and close this case.

**SO ORDERED**.

Dated at Bridgeport, Connecticut, this 29th day of November, 2007.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge
